UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRANSON S. WARD,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>SGT. RICH, et al.,<br><br>　　　　　Defendants. | Case No. EDCV 08-1021-AHM(OP)<br><br>ORDER ACCEPTING FINDINGS, CONCLUSIONS, AND FINAL RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |

　　　　Pursuant to 28 U.S.C. § 636, the Court has reviewed the Second Amended Complaint, all the records and files herein, the Report and Recommendation of the United States Magistrate Judge, and the Objections filed by Plaintiff, de novo.

/ / /

/ / /

/ / /

1    IT IS ORDERED that the Judgment be entered: (1) accepting this Report and Recommendation; (2) granting partial summary judgment as to Plaintiff's First Amendment free exercise claim, Eighth Amendment conditions of confinement claim, and Fourteenth Amendment claim, as to all Defendants; and (3) granting partial summary judgment motion for partial summary judgment as to Plaintiff's punitive damages claim against Defendants' Goodrich and Holmes.

The sole claim remaining for trial is Plaintiff's Eighth Amendment excessive force claim against Defendants Vernal and Harris.

See also attached Appendix A.

DATED: January 25, 2013

HONORABLE A. HOWARD MATZ
United States District Judge

Prepared by:

HONORABLE OSWALD PARADA
United States Magistrate Judge

*Ward v. Rich et al.* (Case No. EDCV 08-1021)

## APPENDIX A

1. **Date Error in SAC**

Page 3 of the R&R states: "This action arises from several incidents allegedly occurring . . . from September 21 through 31, 2005." This is taken directly from the SAC, which lists the date as "9-31-05."

2. **First Amendment Claim**

Based on the SAC and other documents submitted by Plaintiff in opposition to the motion for summary judgment, Plaintiff's First Amendment claim appears to be that he was denied access to his Bible after he was placed in a safety cell and that the Defendants were hostile to his practice of his religion. In particular, Defendant Goodrich showed Plaintiff "with his actions" that he was unhappy with Plaintiff practicing his religion, and Defendant Holmes denied Plaintiff water to drink and taped a garbage bag over the window of the safety cell as a way to stop him from practicing his religion. (SAC at 5; Dkt. 84 at 1-2.)

    A.    <u>Accuracy of the Undisputed Facts</u>

All of Defendants' undisputed facts are supported by citations to excerpts of Plaintiff's deposition transcript, and they accurately portray Plaintiff's own statements about the incident. For example, SUF ¶ 1 states "Goodrich did not 'punish' Plaintiff due to his religious beliefs." This is supported by Plaintiff's statement: "I can't say that he punished me. I don't know if he was doing it deliberately or what, or if he just didn't understand. . . . I don't know if he was trying to punish me, but I did suffer because of his decisions that he made."

The Magistrate Judge's findings of fact are largely based directly on Defendants' statement of undisputed facts. They are based on evidence in the record, and I agree that they are properly deemed as undisputed facts.

In particular, the Magistrate Judge's undisputed facts numbers 2 and 4—the statements that Defendants Goodrich and Holmes "never commented specifically on Plaintiff's religious beliefs" (SUF ¶¶ 2, 4)—are supported directly by Plaintiff's

statements.  With respect to Goodrich, Plaintiff was asked:

> Q: So Sgt. Goodrich never commented specifically on your religious beliefs?
>
> A: No, ma'am.
>
> Q: And he never told you to stop praying or singing?
>
> A: No, he didn't.

Ward Dep. at 13.  With respect to Holmes, Plaintiff was asked:

> Q: Did Deputy Holmes comment on your religious beliefs?
>
> A: No.  He didn't comment.
>
> Q: Did he ever tell you that he didn't share your religious beliefs?
>
> A: No, he didn't verbally say that.  But his actions spoke to me.
>
> Q: Did he ever say he didn't share the same religious beliefs as you?
>
> A: No, he never spoke on religion to me.

Ward Dep. at 28.

   The Magistrate Judge's undisputed fact number 13 includes the fact that "Plaintiff never asked Defendant Goodrich for a Bible."  This statement is supported by Plaintiff's deposition, where he was asked, "Did you ask Sgt. Goodrich for a Bible?" and he answered "No."  Ward Dep. at 13.  Plaintiff stated that he asked for a Bible and was not provided with one, but that he could not recall whom he asked—it was whoever was standing outside his safety cell.  *Id.* at 14.

  B. <u>Magistrate Judge's Analysis</u>

2

The Magistrate Judge's discussion of the legal standard for a First Amendment claim such as Plaintiff's accurately represents the case law. So does his conclusion on page 10, with respect to Plaintiff's First Amendment claim, that Plaintiff has failed to show that his ability to pursue his religion was impinged by Defendants' actions. "Although Defendants did not provide Plaintiff with his Bible while he was in the safety cell, Plaintiff never provided evidence that he is required to read his Bible on a daily basis, particularly given that he was only deprived of his Bible for a short period of time." Moreover, the undisputed facts show that Plaintiff did not ask Goodrich for the Bible. However, Plaintiff did ask some other prison staff person for his Bible, although he could not remember whom he had asked, and there is no evidence that it was any one of the other defendants. Ward Dep. at 13-14.

3.   *Furnace v. Sullivan*

The Ninth Circuit's recent decision in *Furnace v. Sullivan*, --- F.3d ---, 2013 WL 174382 (9th Cir. Jan. 17, 2013) does not affect this summary judgment motion. In *Furnace*, the prisoner-plaintiff claimed that the defendant correctional officers had violated his Eighth Amendment rights by spraying him with an excessive amount of pepper spray and that they had violated his Fourteenth Amendment rights by denying him a vegetarian breakfast, to which he was entitled for religious reasons. *Id.* at *1.

The Ninth Circuit reversed the district court's grant of summary judgment on the Eighth Amendment claim, concluding that the district court had failed to draw all of the inferences in favor of the plaintiff. The Ninth Circuit noted that, according to the plaintiff, he had merely placed his fingers on the edge of the food port of his cell door in order to stabilize himself and had made no threatening remarks to the officers. *Id.* at *6-7. The officers' subsequent, immediate discharge of pepper spray without issuing a warning to the plaintiff to remove his fingers constituted excessive force under the circumstances and was sufficient to deny the officers qualified immunity on the Eighth Amendment claim. *Id.* at *7.

Here, any claim for excessive force based on Plaintiff's having been pepper sprayed fails because Plaintiff is unable to link Defendants to the incident. The claim does not turn on the level of the threat posed by Plaintiff, the amount of force used, or the drawing of inferences in favor of Defendants, as was the case in *Furnace*. As the Magistrate Judge notes, Plaintiff stated that he did not see who

3

sprayed him, and he acknowledged that the only direct involvement that Goodrich had in the incident was in taking photographs afterward. Plaintiff did not assert that any of the other defendants were involved in the pepper spray incident. Defendants Harris and Vernal have not moved for summary judgment on Plaintiff's excessive force claim against them for slamming him to the ground and jumping on him while moving him from the safety cell.